**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

TERRY R., o/b/o M.A.R.,[1]

       Plaintiff,

          v.                                   Civil No. 3:21-cv-187 (HEH)

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,

       Defendant.

**REPORT AND RECOMMENDATION**

    This is an action brought by the grandfather and legal guardian ("Grandfather") of a child-claimant, M.A.R. (Grandfather and M.A.R. are collectively referred to as "Plaintiff"). Plaintiff seeks review of the decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying an application for childhood supplemental security income ("SSI") under the Social Security Act (the "Act"). This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as social security numbers, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of medical information only to the extent necessary to properly analyze the case.

Having reviewed the parties' submissions and the record in this case, and for the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 20) and Motion for Remand (ECF No. 21) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 23) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On December 28, 2015, an application for childhood SSI was filed on behalf of M.A.R. alleging disability beginning May 15, 2015. (R. at 155-158.) The SSA found M.A.R. disabled on April 22, 2016, due to Attention-Deficit/Hyperactivity Disorder ("ADHD"), anxiety disorders, and organic mental disorders. (R. at 92-96.) Subsequently, on March 19, 2019, the Commissioner determined that M.A.R.'s condition had improved to the point where he was no longer disabled. (R. at 112.) The Commissioner upheld its determination upon reconsideration, and Plaintiff requested review of the case by an Administrative Law Judge ("ALJ"). (R. at 125, 130-131.) The ALJ held an administrative hearing on September 30, 2020. (R. at 41-72.) Following the hearing, the ALJ issued an opinion finding that M.A.R.'s disability ended on March 31, 2019, and that he did not become disabled again after that date. (R. at 15-34.) On February 9, 2021, the Appeals Council denied the request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-5.) Plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir.

2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

### III. LEGAL STANDARD

An individual under the age of eighteen is "disabled" for the purpose of obtaining SSI under Title XVI of the Act if that individual has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; *see also* 42 U.S.C. § 1382c(a)(3)(C)(i). An individual has "marked and severe functional limitations" if the impairment "meets, medically equals, or functionally equals" the severity of any listing found in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.902. However, "no individual under the age of 18 who engages in substantial gainful activity . . . may be considered to be disabled." 42 U.S.C. § 1382c(a)(3)(C)(ii).

After the Commissioner awards SSI benefits to an individual under the age of 18 based upon "an impairment (or combination of impairments) which is likely to improve," the

Commissioner must periodically conduct an evaluation to determine if the individual remains eligible for benefits.[3] 42 U.S.C. § 1382c(a)(3)(H)(ii)(I). During this process, referred to as a "continuing disability review," the ALJ utilizes a three-step medical improvement review standard to ascertain whether the child's disabling condition improved since the most recent favorable decision. *See* 20 C.F.R. § 416.994a(a). "The most recent favorable decision is the latest final determination or decision involving a consideration of the medical evidence and whether [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994a(c)(1). This is referred to as the "comparison point decision" ("CPD"). SSR 05-03p, 2005 SSR LEXIS 4, 70 Fed. Reg. at 21,834.

At step one, the ALJ must determine whether the child-claimant experienced medical improvement[4] in his disabling impairment since the CPD. 20 C.F.R. § 416.994a (a)(1), (b)(1). If there has been no medical improvement, the child-claimant continues to be disabled, unless an exception applies. 20 C.F.R. § 416.994a (a)(1). If there has been medical improvement, the ALJ proceeds to step two. *Id.*

At step two, if the CPD was made on or after January 2, 2001,[5] the ALJ must determine whether the impairment the child-claimant had at the CPD now meets or medically equals the same

---

[3] The Act provides that "[n]ot less frequently than once every 3 years, the Commissioner shall review . . . the continued eligibility for benefits . . . of each individual who has not attained 18 years of age and is eligible for such benefits by reason of an impairment (or combination of impairments) which is likely to improve." 42 U.S.C. § 1382c(a)(3)(H)(ii)(I).

[4] "Medical improvement is any decrease in the medical severity of [the child-claimant's] impairment(s) which was present at the time of the most recent favorable decision that [the child claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994a(c).

[5] On September 11, 2000, the SSA published final rules for evaluating disability in children under the SSI program. These rules became effective on January 2, 2001. They simplified the prior rules for evaluating functional equivalence in several ways, but the primary change was that findings of

listing that it met or medically equaled at the time of the CPD, or whether the impairment functionally equals the listings. *Id*. § 416.994a(b)(2); SSR 05–03p. If it does, the child-claimant continues to be disabled, unless an exception applies. 20 C.F.R. § 416.994a (b)(2). If it does not, the ALJ must determine whether the CPD impairment functionally equals the listings. *Id*. If the impairment does functionally equal the listings, the claimant continues to be disabled, unless an exception applies. *Id*.

For purposes of steps one and two of the analysis, there are two groups of exceptions that, if applicable, may terminate benefits even absent medical improvement. The Commissioner will find that a Group 1 exception applies if: (1) "[s]ubstantial evidence shows that, based on new or improved diagnostic techniques or evaluations, [the claimant's] impairment(s) is not as disabling as it was considered to be at the time of the most recent favorable decision," *id.* § 416.994a(e)(1); or (2) "[s]ubstantial evidence demonstrates that any prior disability decision was in error," *id.* § 416.994a(e)(2). If a Group 1 exception applies, the Commissioner will assess whether the claimant is currently disabled, considering all impairments. *Id.* § 416.994a(e). The Commissioner will find that a Group 2 exception applies if: (1) "[a] prior determination or decision was fraudulently obtained," id. § 416.994a(f)(1); (2) the claimant, without good cause, fails to cooperate with the SSA, *id.* § 416.994a(f)(2); (3) the SSA is unable to find the claimant, id. § 416.994a(f)(3); or (4) the claimant "fail[s] to follow prescribed treatment which would be expected to improve [the claimant's] impairment (s) so that it no longer results in marked and severe functional limitations." *Id.* § 416.994a(f)(4). If a Group 2 exception applies, the claimant's benefits are terminated without further inquiry into whether the claimant is currently disabled. *Id.* § 416.994a(f).

---

functional equivalence made on or after January 2, 2001, are not based on a specific listing. SSR 05-03p.

If no exception applies, the ALJ proceeds to step three. At step three, the ALJ must determine whether the child-claimant is currently disabled under the three-step sequential analysis for determining whether a child is disabled initially. 20 C.F.R. § 416.994a(b)(3). The ALJ must first determine whether claimant has a "severe" impairment or combination of impairments. 20 C.F.R. § 416.994a(b)(3)(i). If not, the claimant is no longer disabled. *Id*. If so, and the severe impairment meets or medically equals the severity of any listed impairments, the claimant continues to be disabled. 20 C.F.R. § 416.994a(b)(3)(ii). However, if the claimant's current impairment does not meet or medically equal the severity of any listed impairment, the ALJ must determine if the claimant's impairment functionally equals the listings. *Id*.

To determine whether an impairment or combination of impairments functionally equals the listings, the ALJ must assess functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 926a(b). To functionally equal the listings, a claimant's impairment must result in "marked" limitations in at least two domains of functioning or an "extreme" limitation in at least one domain. 20 C.F.R. § 416.926a(d). A claimant has a "marked limitation" in a domain when it "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 926a(a).

## IV. FACTUAL BACKGROUND

In making his determinations, the ALJ stated that he:

> [C]onsidered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and SSR 16-3p. The undersigned also considered the medical opinion, prior administrative medical finding, and

6

additional relevant evidence in accordance with the requirements of
20 C.F.R. § 416.920c.[6]

(R. at 28.) Accordingly, before denying the claim for disability benefits, the ALJ considered: (1)
Grandfather's statements and testimony; (2) M.A.R.'s educational records; (3) medical evidence;
and (4) administrative medical findings. (R. at 15-34.)

**A. Grandfather's Statements and Testimony.**

The record contains two function reports (collectively, the "Function Reports") completed
by Grandfather regarding the extent of M.A.R.'s impairments and limitations. (R. at 190-202, 204-
217). The first report, dated February 6, 2019 (the "February 2019 Report"), identified M.A.R.'s
limitations in learning, physical abilities, behavior, taking care of personal needs, and paying
attention and sticking with a task. (R. at 193-202.) Grandfather also reported M.A.R.'s difficulty
using his hands. (R. at 202.) The second report dated July 12, 2019 (the "July 2019 Report),
reported the same limitations as the February 2019 Report, in addition to hearing and
communication difficulties. (R. at 204-216.) Grandfather reported that "[M.A.R.] does good in
school because we have a plan in place, and it is followed every day," and noted that M.A.R. has
autism and "will not grow out of it." (R. at 217.)

Grandfather also completed a behavioral checklist and autism index. (R. at 631-632.) The
behavioral checklist indicated M.A.R. had difficulties with hyperactivity, anxiety, adaptability,
and emotional self-control. (R. at 631.) The autism index completed by Grandfather indicated that
autism was "very likely." (R. at 632.) During the hearing, Grandfather testified that M.A.R. "won't
talk to kids," "doesn't complete his homework okay," "has no issues with speaking," "can use [and
eat with] a fork," and has emotional breakdowns or outbursts every day. (R. at 55-58, 61, 66, 70.)

---

[6] This section describes how the SSA considers medical opinions and prior administrative medical
findings.

Grandfather also testified that M.A.R. has autism. (R. at 48, 54, 56, 64.) Generally, Grandfather reported numerous behavioral issues, both at home and at school. (R. at 43-72.)

**B. M.A.R.'s Educational Records.**

*1. Teacher Questionnaires.*

The record includes two teacher questionnaires completed by M.A.R.'s teacher, Amber Owen ("Ms. Owen"). (R. at 604-611, 656-663.) In the March 2019 questionnaire, Ms. Owen reported that M.A.R. was reading at a 3.8 grade level[7] and was performing at grade level with math and writing. (R. at 604.) Ms. Owen observed no problems in the domain of acquiring and using information, one "slight" and one "obvious" problem in the domain of attending and completing tasks, and no problems in the domain of moving about and manipulating objects. (R. at 605-606, 608.)[8]

In the August 2019 questionnaire, however, Ms. Owen reported that M.A.R. was: (1) reading at a 2.3 grade level[9]; (2) doing math on grade level; and (3) writing below grade level. (R. at 656.) Ms. Owen observed: five "slight" problems and five "obvious" problems in the domain of acquiring and using information; three "slight" problems, three "obvious" problems, and one "serious" problem in the domain of attending and completing tasks; and no problems in the domain of moving about and manipulating objects. (R. at 657-658, 660.)[10]

---

[7] M.A.R. at the time of March 2019 questionnaire was in second grade. (R. at 604.)

[8] In attending and completing tasks, Ms. Owen reported a "slight problem" with carrying out multi-step instructions and an "obvious" problem with working at a reasonable pace/finishing on time. (R. at 606.)

[9] M.A.R. at the time of the August 2019 questionnaire was in third grade. (R. at 656.)

[10] In acquiring and using information, Ms. Owen reported "slight" problems with comprehending and following oral instructions, comprehending and doing math problems, providing organized oral explanations and adequate descriptions, learning new material, and recalling an applying

*2. 504 Eligibility Summary.*

Prior to February 2019, M.A.R. had an individualized education plan ("IEP.") (R. at 456.) On February 13, 2019, it was decided that M.A.R. no longer needed special education services, and he was referred for consideration of a Section 504 plan.[11] (R. at 450.)

M.A.R.'s Section 504 Eligibility Summary included evaluations for current class performance, observation, psychological indications, educational, occupational therapy, and sociocultural. (R. at 362-364.) Ms. Owen indicated that M.A.R. had all A's on his report card, was reading above grade level, and was doing well in math. (R. at 362.) She also observed that M.A.R. was on-task and participated during large group reading. (R. at 362.) Although "a little fidgetiness" was noted, it was not distracting to M.A.R. or those around him. (R. at 362.)

---

previously learned material. (R. at 657.) In the same domain, she observed "obvious" problems with understanding school and content vocabulary, reading and/or comprehending written material, understanding and participating in class discussions, expressing ideas in written form, and applying problem solving skills in class discussions. (R. at 657.) In attending and completing tasks, Ms. Owen reported "slight" problems with carrying out single-step instructions, organizing own things or school materials, and completing class assignments. (R. at 658.) Ms. Owen reported "obvious" problems with focusing long enough to finish assigned activity or task, refocusing to task when necessary, and carrying out multi-step instructions. (R. at 658.) Ms. Owen also reported a "serious" problem with working at a reasonable pace/finishing on time. (R. at 658.)

[11] A 504 plan is adopted pursuant to section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794, which provides, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A 504 plan differs in some respects from an IEP under the Individuals with Disabilities in Education Act, codified at 20 U.S.C. §§ 1400, *et seq.* For example, a 504 plan has a broader definition of disability than an IEP and has fewer rigid requirements in its application. *S.T. by Taylor v. Berryhill*, No. 2:16cv717, 2017 WL 6945185, at *13 (E.D. Va. Dec. 21, 2017).

**C. Medical Evidence.**

*1. Psycho-educational Assessment.*

Ashley Thompson, the school psychologist, assessed M.A.R. on February 7, 2019. (R. at 629-632.) The assessment revealed that M.A.R.'s IQ, mathematics skills, and overall cognitive abilities were in the low average range. (R. at 630-632.) M.A.R.'s reading and language skills and visual motor ability were within the average range, and his educational standards scores ranged from low average to high average. (R. at 631-632.) The assessment also references a behavioral checklist completed by M.A.R.'s teacher, which showed that M.A.R. exhibited average behavior in all areas. (R. at 631.) M.A.R.'s teacher also completed an autism index and found autism to be "unlikely." (R. at 632.)

*2. Occupational Therapy Evaluations.*

Occupational therapy evaluations ("OTEs") were performed by Mary Emily Burgess, OTR/L ("Ms. Burgess"), in early 2019. (R. at 205-08.) Ms. Burgess facilitated the Development Test of Visual Perception to M.A.R. and found that he scored in the first percentile for hand-eye coordination. (R. at 206.) The OTEs revealed that M.A.R.'s overall handwriting legibility was functional for his age and his handwriting was appropriate for his age. (R. at 207-208.) Ms. Burgess also noted that "[M.A.R.] was able to maintain appropriate seated attention during handwriting activities and standardized testing tasks. He was able to follow one and two-step directions without additional verbal cueing." (R. at 207.)

**D. Administrative Medical Findings**

In August 2019, Daniel Walter, Psy.D. ("Dr. Walter") and Joseph Duckwall, M.D. ("Dr. Duckwall") both found that M.A.R. had less than marked limitations in acquiring and using information, attending and completing tasks, and moving about and manipulating objects. (R. at

647-654.) The agency experts considered medical, early intervention, school, parent/caregiver, and other relevant evidence in their determinations. (R. at 648.) The ALJ found these opinions persuasive, excluding their opinion of M.A.R.'s abilities to interact with others and care for himself, because they were generally supported and consistent with the record. (R. at 30.)

## V. THE ALJ'S DECISION

The ALJ followed the three-step medical improvement review process established by the Act in analyzing M.A.R.'s disability claim. (R. at 15-34.) At step one, the ALJ found that as of March 31, 2019, medical improvement occurred since the time of the CPD (i.e., April 22, 2016). (R. at 18-19.)

At step two, the ALJ determined that since March 31, 2019, the impairments that M.A.R. had at the time of the CPD have not met or medically equaled section 112.11, of 20 C.F.R. Part 404, Subpart P, Appendix 1 as that listing was written at the time of the CPD. (R. at 19.) The ALJ then found that since March 31, 2019, the impairments M.A.R. had at the time of the CPD have not functionally equaled the listed impairments. (R. at 19.) Specifically, the ALJ determined that, since March 31, 2019, M.A.R. had less than marked limitations in the domains of: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; and (5) caring for himself. (R. at 20-27.) The ALJ found that M.A.R. had no limitation in the domain of health and physical well-being. (R. at 26-27.)

At step three, the ALJ concluded that since March 31, 2019, M.A.R. has had the following severe impairments: ADHD, anxiety disorder, and adjustment disorder. (R. at 27.) The ALJ then found that since March 31, 2019, M.A.R. has not had an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § Part 404,

Subpart P, Appendix 1 (20 C.F.R. § 416.925 and 416.926). (R. at 27.) The ALJ found insufficient medical documentation indicating the requisite number of symptoms for ADHD, adjustment disorder, or anxiety disorder. (R. at 27.) As a result, the ALJ concluded that there was insufficient evidence indicating an extreme limitation in one, or marked limitation of two, of the domains of functioning. (R. at 27.) Therefore, the ALJ concluded that M.A.R.'s disability ended as of March 31, 2019, and he has not become disabled again since that date. (R. at 34.)

## VI. ANALYSIS

Plaintiff objects to the ALJ's disability determination and specifically challenges the ALJ's conclusion that M.A.R. had "less than marked limitations" in acquiring and using information, attending and completing tasks, and moving about and manipulating objects. (Pl.'s Mem. Supp. Summ. J. at 1-2 (ECF No. 22) ("Pl.'s Mem.").) Plaintiff argues that the ALJ erred by: (1) providing insufficient reasoning to support his findings; (2) failing to weigh Grandfather's statements and testimony; and (3) improperly resolving contradictory evidence. (Pl.'s Mem. at 5, 8, 10.) Defendant responds that substantial evidence supports the ALJ's conclusions. (Def.'s Mem. Supp. Summ. J. at 14 (ECF No. 23) ("Def.'s Mem.").) For the reasons set forth below, the Court finds that the ALJ did not err, and substantial evidence supports his findings.

### A. The ALJ Did Not Err in His Step Two and Three Analyses.

*1. The ALJ Did Not Err in His Discussion of Conflicting Evidence.*

Plaintiff argues that the ALJ failed to resolve an apparent evidentiary conflict between: (1) the Function Reports and Ms. Owen's statements in the "504 Eligibility Summary;" (2) the Function Reports and Ms. Owen's teacher questionnaire from March 2019; and (3) Ms. Owen's teacher questionnaires from March 2019 and August 2019. (Pl.'s Mem. at 7-8.) The Court

concludes that the ALJ sufficiently addressed the conflicting evidence and substantial evidence supports his findings.

When "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision, provided it is based on something less than a preponderance, but more than a scintilla of evidence. *Harper v. Astrue*, No. 3:10CV271–HEH, 2011 WL 3820322, at *3 (E.D. Va. Aug. 29, 2011) (citing *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)). Remand is appropriate only when the ALJ fails to address conflicting evidence entirely. *Mascio v. Colvin*, 780 F.3d 632, 737 (4th Cir. 2015) (finding remand appropriate when the ALJ did not address material evidence). Furthermore, remand is appropriate in child disability review cases where an ALJ ignores multiple teacher questionnaires entirely. *S.T. by Taylor v. Berryhill*, No. 2:16cv717, 2017 WL 6945185, at *13 (E.D. Va. Dec. 21, 2017) (holding that the ALJ's failure to even reference conflicting teacher questionnaires warranted remand).

Grandfather completed the February 2019 Report stating that M.A.R. struggles to read or understand stories in books or magazines, and that he cannot continue when he does not understand what he is trying to read. (R. at 197.) However, Ms. Owen reported that M.A.R. had all A's on his report card, was reading above grade level, and was doing well in math. (R. at 227.) Plaintiff argues that the ALJ erred by not "resolving the conflict" between these statements. (Pl.'s Mem. at 7.)

Grandfather also stated that M.A.R. does not finish what he starts and is easily distracted. (R. at 201, 216.) However, in her March 2019 teacher questionnaire, Ms. Owen opined that M.A.R. had "no problem" focusing long enough to finish an assigned activity and an "obvious" problem with working at a reasonable pace and finishing on time. (R. at 606.) Furthermore, as discussed

above, Ms. Owen's March and August 2019 teacher questionnaires reported different levels of problems in different areas of each domain. *See* discussion *supra* pp. 8-9.

When analyzing M.A.R.'s less-than-marked limitation in acquiring and using information, the ALJ discussed the Function Reports and noted that "[M.A.R.] is unable to read and understand stories in books or magazines, write in longhand script, write a simple story. . . and if [M.A.R.] doesn't understand the story, he does not want to continue." (R. at 20.) The ALJ also addressed: (1) the Function Reports when evaluating the domains of attending and completing tasks and moving about and manipulating objects; and (2) Ms. Owen's March and August 2019 questionnaires in his opinion. (R. at 20-22, 24.)

In the cases of *Mascio* and *S.T. by Taylor v. Berryhill*, the ALJ failed to mention or discuss material conflicting evidence. *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015); *S.T. by Taylor v. Berryhill*, No. 2:16cv717, 2017 WL 6945185 (E.D. Va. Dec. 21, 2017). However, in the present case, the ALJ addressed and cited to the Function Reports and Ms. Owen's March and August 2019 teacher questionnaires. (R. at 19-24, 31-33.) The ALJ explained that the March 2019 teacher questionnaire was more consistent with other evidence in the record. (R. at 20.) Consistent with *Mascio* and *S.T. by Taylor v. Berryhill*, the ALJ addressed all "contradictory" evidence, and did not completely fail to mention any material information.

Plaintiff contends that the ALJ's failure to resolve the apparent conflicts presented by the aforementioned evidence was "clear error" because the ALJ was required to provide a more extensive explanation of how he resolved the evidence of record. On review of the ALJ's decision, the ALJ sufficiently articulated how he evaluated the evidence and explained his finding that Grandfather's statements and testimony were inconsistent with other evidence in the record. (R. at 29.) *Lee v. Berryhill*, No. 2:18cv214, 2019 WL 3559473, at *11 (E.D. Va. June 19, 2019) (finding

14

that an ALJ's opinion satisfies *Mascio* if it identifies supporting evidence and explains why conflicting evidence was less credible).

Accordingly, the Court concludes that the ALJ did not err in his evaluation of this evidence.

*2. The ALJ Properly Considered Grandfather's Statements and Testimony.*

Plaintiff asserts the ALJ: (1) failed to weigh Grandfather's statements or give any reasons for rejecting them; and (2) should have made a finding as to the weight of Grandfather's testimony. (Pl.'s Mem. at 7, 9-10, 11.) Defendant maintains that since Grandfather's allegations were inconsistent with other evidence, the ALJ properly considered Grandfather's testimony and statements. (Def.'s Mem. at 19.)

Notwithstanding extraordinary situations, this Court must defer to the ALJ's credibility determinations. *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Carpenter v. Berryhill*, No. 3:17cv248, 2018 WL 3385191, at *12 (E.D. Va. May 31, 2018) (quoting *Eldeco*, 132 F.3d at 1011). It is well within the ALJ's fact-finding abilities to make credibility determinations regarding inconsistencies between Grandfather's testimony and other evidence. *Blaine v. Astrue*, No. 4:09cv104, 2010 WL 3291825, at *4 (E.D. Va. Aug. 18, 2020). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless they are unreasonable, contradict other findings of fact, or are based on an inadequate reason or no reason at all. *Carpenter v. Berryhill*, No. 3:17cv248, 2018 WL 3385191, at *12 (E.D. Va. May 31, 2018) (quoting *N.L.R.B. v. McCullough Env't Servs.*, *Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

In his decision, the ALJ explained that "statements [by Grandfather] concerning the intensity, persistence and limiting effects of [M.A.R.'s] symptoms are not entirely consistent with

the objective medical and other evidence for the reasons explained below." (R. at 28.) The ALJ identified numerous inconsistencies with Grandfather's statements, testimony, and other evidence in the record. For instance, the ALJ noted inconsistencies between a behavioral checklist and autism index completed by Grandfather and a behavioral checklist and autism index completed by M.A.R.'s teacher. *See* discussion *supra* pp. 7, 9, 10.

Plaintiff claims that the ALJ did not discuss which of Grandfather's statements were not credible and did not "weigh" his testimony properly. (Pl.'s Mem. at 7, 9.) However, as previously explained, the ALJ identified which aspects of Grandfather's statements contradicted other evidence. (R. at 29.) Since the record indicates that the ALJ explained the inconsistencies between Grandfather's statements, testimony, and other evidence, the ALJ's credibility determination regarding these statements and testimony is supported by substantial evidence. *See Carpenter v. Berryhill*, No. 3:17cv248, 2018 WL 3385191, at *12 (E.D. Va. May 31, 2018) (finding that substantial evidence supported the ALJ's credibility determination when testimony was inconsistent with medical evidence).

### 3. The ALJ's Limitation Findings are Supported by Substantial Evidence.

Plaintiff also contends that the ALJ erred in finding that M.A.R. had less than marked limitations in acquiring and using information, attending and completing tasks, and moving about and manipulating objects. (Pl.'s Mem. at 1-2.) Defendant responds that substantial evidence supports the ALJ's findings. (Def.'s Mem. at 14.) Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or

misapplication of the law. *Perales*, 402 U.S. at 390; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)). The Court finds that substantial evidence supports the ALJ's finding that M.A.R. had less than marked limitations in acquiring and using information, attending and completing tasks, and moving about and manipulating objects.

a. "Acquiring and Using Information."

The acquiring and using information domain considers how well the child acquires or learns information, and how well the child uses the information. 20 C.F.R. § 416.926a(g). This Court has previously found that "good grades at school" and a child-claimant's ability "to demonstrate knowledge of skills through means other than multiple-choice formatted testing," qualified as substantial evidence to support the ALJ's finding that the child-claimant had a less than marked limitation in the acquiring and using information domain. *Blaine v. Astrue*, No. 4:09cv104, 2010 WL 3291824, at *12 (E.D. Va. June 3, 2010). This Court has also found that a teacher questionnaire reporting no "serious" problems and noting the child-claimant's progress in reading and writing constituted substantial evidence to support a finding of less than marked limitation in the domain of acquiring and using information. *Williams v. Colvin*, No. 1:14–cv–01349 (AJT/IDD), 2016 WL 1258594, at *10 (E.D. Va. Mar. 2, 2016). Notably, state agency consultants are considered "highly qualified" and "experts" in disability evaluations. 20 C.F.R. § 404.1513a(b)(1).

The ALJ determined that M.A.R. had a less than marked limitation in the domain of acquiring and using information. (R. at 20, 30.) In reaching this conclusion, the ALJ cited Ms. Owen's March 2019 teacher questionnaire, the February 2019 psycho-educational assessment, and the administrative medical findings of Dr. Walter and Dr. Duckwall. *See* discussion *supra* pp. 8-

10. The type of evidence cited by the ALJ is similar to evidence considered by the ALJ in *Davis v. Colvin*. In that case, this Court found that psychological testing and teacher questionnaires constituted substantial evidence to support the ALJ's findings that the claimant had a less than marked limitation in acquiring and using information. *Davis v. Colvin*, No. 1:13cv733 (JCC/JFA), 2014 WL 325143, at *12 (E.D. Va. Jan. 28, 2014). In the present case, the ALJ relied on psychological testing, teacher questionnaires, and opinions of state agency consultants to support his finding that M.A.R. had a less than marked limitation in acquiring and using information. (R. at 20, 21, 30.)

Plaintiff argues that the ALJ's finding in this domain is "not preceded by any reasoning" and that he "made no attempt to draw a logical bridge." (Pl.'s Mem. at 6.) However, the ALJ summarized and explained how his findings were supported by Ms. Owen's teacher questionnaire, M.A.R.'s cognitive testing scores, and academic grades.[12] Furthermore, the ALJ found the state agency psychologists' opinions persuasive and used them to support his findings. Accordingly, the Court concludes that the ALJ's determination that M.A.R. had a less than marked limitation in acquiring and using information is supported by substantial evidence.

### b. "Attending and Completing Tasks."

The ALJ also found that M.A.R. had a less than marked limitation in the domain of attending and completing tasks. (R. at 22, 31.) Upon review, the Court finds that there is substantial evidence to support the ALJ's conclusion that M.A.R. had a less than marked limitation in the domain of attending and completing tasks.

---

[12] *See e.g., Davis v. Colvin*, No. 1:13cv733 (JCC/JFA), 2014 WL 325143, at *12 (E.D. Va. Jan. 28, 2014); *Blaine v. Astrue*, No. 4:09cv104, 2010 WL 3291824, at *12 (E.D. Va. June 3, 2010); *Williams v. Colvin*, No. 1:14–cv–01349 (AJT/IDD), 2016 WL 1258594, at *10 (E.D. Va. Mar. 2, 2016).

Analysis of the domain of attending and completing tasks considers how well the child is able to focus and maintain his attention, and how well he is able to begin, carry through, and finish his activities, including the pace at which he performs activities. 20 C.F.R. § 416.926a(h). Courts have identified state agency mental health experts' opinions and teacher reports sources that provide substantial evidence. *Delino o/b/o B.J. v. Berryhill*, No. 4:18cv107, 2019 WL 4935453, at *11 (E.D. Va. June 18, 2019).

This Court addressed the issue of teacher questionnaires and limitation findings in *Williams v. Colvin*. In that case, the Court noted that a teacher questionnaire reported "serious problems" in a particular activity and "obvious problems" overall in this domain. *Williams v. Colvin*, No. 1:14–cv–01349 (AJT/IDD), 2016 WL 1258594, at *11 (E.D. Va. Mar. 2, 2016). However, the same questionnaire also reported "no problems" or "slight problems" in the remaining activities. *Id.* Subsequently, the Court determined that substantial evidence supported the ALJ's finding that the claimant had a less than marked limitation in attending and completing tasks. *Id.*

Like the ALJ in *Williams*, the ALJ in the present matter was presented with evidence that M.A.R. had only "slight problems" with one activity and an "obvious problem" with another. (R. at 606.) Plaintiff asserts the ALJ should have relied on the evidence in the August 2019 teacher questionnaire. However, consistent with *Williams*, the August 2019 questionnaire does not support a marked limitation because it only reported a "serious problem" with one activity, "obvious problems" with three activities, and "slight or no problems" with the rest. (R. at 658.) Therefore, the March and August 2019 teacher questionnaires provide substantial evidence to support a less than marked limitation in this domain.

The ALJ also cited the OTEs, February 2019 psycho-educational evaluation, and M.A.R.'s Section 504 Plan to support his findings. (R. at 22.) As mentioned above, these records indicate

that M.A.R. had a less-than-marked limitation in this domain. Accordingly, the Court concludes that the ALJ's determination that M.A.R. had a less than marked limitation in attending and completing tasks is supported by substantial evidence.

c. "Moving about and Manipulating Objects."

The ALJ determined that M.A.R. had a less than marked limitation in the domain of moving about and manipulating objects. Plaintiff argues that the ALJ failed to provide "any reasoning" to support this finding. (Pl.'s Mem. at 10.) Specifically, Plaintiff contends: (1) the ALJ "failed to mention" that M.A.R. scored in the first percentile in hand-eye coordination and visual-motor integration; and (2) the ALJ's analysis of this evidence was a "grossly inadequate appreciation" of M.A.R.'s limitations. (Pl.'s Mem. at 11.) Defendant responds that: (1) the ALJ is not required to refer to every piece of evidence in his opinion; and (2) poor hand-eye coordination is not dispositive because it is only an example of limited functioning. (Def.'s Mem. at 18-19.) The Court concludes that substantial evidence exists to support the ALJ's finding that M.A.R. has a less than marked limitation in moving about and manipulating objects.

"There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec*., 769 F.3d 861, 865 (4th Cir. 2014*). Rather, the ALJ has the exclusive responsibility to evaluate all the . . . opinions and judge whether they are supported by and consistent with the rest of the record. 20 C.F.R. § 416.927. *Emily P. v. Kijakazi*, No. 3:20-cv-00368 (MHL), 2021 WL 7906742, at *10 (E.D. Va. Oct. 12, 2021). Plaintiff contends that the ALJ "failed to mention" evidence from the OTEs showing M.A.R.'s first percentile scores in hand-eye coordination and visual motor integration. (Pl.'s Mem. at 10.) Notably, Plaintiff acknowledges that the ALJ discussed the OTEs in his opinion and mentioned M.A.R.'s difficulties with visual perception and visual-motor integration. (Pl.'s Mem. at 10.)

20

The regulations advise that school-age children without impairments should "move at an efficient pace about one's school, home, and neighborhood." 20 C.F.R. § 416.926a(i)(2)(iv). Some examples of difficulty children could have in this domain include difficulty with motor activities, balance or climbing up and down stairs, coordinating gross motor movements, sequencing hand or finger movements, fine motor movement, or poor hand-eye coordination when using a pencil or scissors. 20 CFR § 416.926a(j)(3). Upon review of the ALJ's opinion, the ALJ addressed the OTEs by explicitly noting M.A.R.'s difficulties with visual perception and visual motor integration. (R. at 24.) Furthermore, substantial evidence supports the ALJ's determination despite M.A.R.'s hand-eye coordination and visual-motor integration scores.

This Court in *Delino o/b/o B.J. v. Berryhill* considered whether substantial evidence supported the ALJ's finding that Plaintiff had no marked limitation in moving and manipulating objects. *Delino o/b/o B.J. v. Berryhill*, No. 4:18cv107, 2019 WL 4935453, at *13 (E.D. Va. June 18, 2019). In that case, the Court found that the ALJ sufficiently articulated his findings because he cited to the claimant's teacher questionnaires, which showed no difficulties in this domain, and considered the state agency psychologist's assessment that the claimant had no limitations in that area. *Id*. Subsequently, the Court determined that substantial evidence supported the ALJ's findings. *Id*.

Like the ALJ in *Delino,* the ALJ in the present matter sufficiently articulated his findings because he cited to Ms. Owen's teacher evaluation, which showed no problems with M.A.R.'s abilities in moving and manipulating objects, and the state agency psychologists, who determined that M.A.R. had a less than marked limitation in this domain. (R. 24, 30, 33, citing R. at 608, 649, 660.) The ALJ also cited the OTEs which found M.A.R.'s overall handwriting to be functional and appropriate for his age. (R. at 24, 33, 207-208.)

Therefore, substantial evidence supports the ALJ's finding that M.A.R. had a less than marked limitation in moving about and manipulating objects.

## VII. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 20) and Motion to Remand (ECF No. 21) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 23) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to Senior United States District Judge Henry E. Hudson.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC

Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: July 26, 2022